**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CAMBRIDGE MUTUAL FIRE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 18 C 5951 |
| BELL & ARTHUR CONDOMINIUM ASSOCIATION, an Illinois not-for-profit corporation, MICHAEL MENTO, LISA MIJATOVIC, DRITON RAMUSHI, SELI BENKO, ALAN ALHOMSI, and NAWWAR ALHOMSI, | ) ) ) ) ) ) ) ) | Judge Tharp<br><br>Magistrate Judge Mason |
| Defendants. | ) | |

**BELL AND ARTHUR CONDOMINIUM ASSOCIATION'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant, Bell and Arthur Condominium Association (hereinafter "Bell and Arthur" or the "Association") by its attorney, Brian J. Gilbert/Chicago Advocate Legal, in its *Memorandum in Opposition to Plaintiff's Motion for Summary Judgment,* filed against the Plaintiff, Cambridge Mutual Fire Insurance Company (hereinafter "Cambridge"), states the following in support thereof:

**Introduction**

Cambridge's Motion for Summary Judgment as to Counts I and II seeks a declaratory judgment that it has no duty to defend the Association in the Underlying Litigation under its Businessowners Liability Insurance policy ("policy"), effective from December 6, 2015 to December 6, 2016, renewed to December 6, 2017, and then renewed again to December 6, 2018. (Doc. #: 126, ¶ 7). In response, Bell and Arthur disputes that the allegations in the Third Amended Complaint in the Underlying Litigation fall outside the potential coverage of

Cambridge's policy, due to the existence of multiple allegations of property damages caused by valid occurrences, allegations of bodily injury caused by valid occurrences, and allegations of wrongful acts by directors and officers of the Association. As such, Cambridge continues to have a duty to defend the Association in the Underlying Litigation.

## Standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

## Argument

Cambridge fails to establish in its Motion for Summary Judgment and Statement of Material Facts that it is entitled to judgment as a matter of law. To determine whether a claim qualifies for coverage under a policy, the Court applies an "eight corners" analysis, in which "the court compares the four corners of the underlying complaint with the four corners of the insurance policy to determine whether facts alleged in the underlying complaint fall within or potentially within coverage." *Pekin Ins. Co. v. Precision Dose, Inc.*, 2012 IL App (2d) 110195 ¶ 36. "The factual allegations of the [underlying] complaint, rather than the legal theory under which the action is brought, determine whether there is a duty to defend." *Amerisure Mut. Ins. Co. v. Microplastics, Inc.*, 622 F.3d 806, 815 (7th Cir. 2010) (quoting *Pekin Ins. Co. v. Dial*, 355 Ill. App. 3d 516, 823 N.E.2d 986, 990 (2005)). The allegations in the underlying complaint must

2

be liberally construed in favor of the insured." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 125 (1992).

Generally speaking, if the complaint alleges facts, as opposed to legal theories, potentially within the coverage of the policy, the insurer's duty to defend is established. This duty to defend extends to an entire case even when the complaint alleges several causes of action or theories of recovery against the insured, only one of which is potentially within the coverage of the policy. See *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 223 Ill. 2d 352, 363, 860 N.E.2d 307, 314-15 (2006); *United States Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926, 930 (1991); *Country Mut. Ins. Co. v. Dahms*, 2015 IL App (1st) 141392-U, ¶ 30. In general, an insurer may justifiably refuse to defend its insured only where it is apparent from a comparison of the allegations of the complaint and the terms of the policy that the complaint fails to state any claim that may potentially give rise to a duty to pay or indemnify under the policy. See *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 108, 607 N.E.2d 1204, 1212 (1992); *Am. Zurich Ins. Co. v. Wilcox & Christopoulos*, L.L.C., 2013 IL App (1st) 120402, at ¶28, 984 N.E.2d 86, 95.

    **A. The Third Amended Complaint in the Underlying Litigation alleges multiple property damages that were caused by an occurrence, as defined in Cambridge's policy, and may potentially give rise to a duty to pay or indemnify.**

Cambridge's Motion for Summary Judgment and Statement of Material Facts do not support a finding that there is no potential of Cambridge's policy covering the numerous property damages alleged in the Underlying Plaintiff's Third Amended Complaint. The Third Amended Complaint includes specific allegations regarding property damages, including damages involving the Association's boiler, hot water lines, and drainpipe.

The allegations pertaining to the Association's boiler in the Underlying Plaintiff's Third Amended Complaint state that,

> Defendants' injurious and damaging actions against Plaintiffs greatly escalated since March 2016. This was soon after the Defendants reported a physical damage to [the Association's] steam heat boiler which affected Plaintiffs then to investigate that property damage thoroughly and request details and a lawful hearing about.

(Doc. #: 31-4, Pg. 4).

Count 10, titled "Property Damage – Boiler ($28,000+), adds that,

> On or about March 10, 2016, and at all times relevant here to, [Bell and Arthur Condominium Association] was the owner of certain property, to wit: [Peerless] case iron commercial steam boiler Series 211A with the value of approximately $28,000 (Twenty eight thousand US Dollars).
>
> …At said time and at all times relevant hereto, Defendants [Mento & Trusts] represented by Defendant [Michael Mento] and Defendant [Driton Ramushi] engaged in a certain course of conduct to cause damage to the aforementioned property.
>
> …As a direct and proximate result of the acts of Defendants, [the Association] suffered damage to their aforementioned property in the following respect:
>
> > (1) Three holes inflicted in the top part of the first water section in the boiler.
> > (2) Rendered the boiler out-of-order and nonoperational.

(Doc. #: 31-4, Pg. 37-38).

The allegations pertaining to the Association's hot water lines, found in Count 13, titled, "Municipal Code Breach – Hot Water", state that,

> Since Plaintiffs moved to their Condominium unit in October 2014, provision of hot water to the unit by Defendant [Bell and Arthur Condominium Association] has been very low, insufficient and in violation of the improvements of the City of Chicago.
>
> …Aforementioned problem was increasing gradually over time, and early in year 2016 the provision of hot water provision to Plaintiffs unit became very low it almost does not exist.

4

> …Aforementioned problem was inspected by both Plaintiffs and an independent plumber with the determination that it originates from outside Plaintiffs' unit and that it is caused by defects in the main pipes [that] belong to [Bell and Arthur Condominium Association] which are located outside Plaintiffs' condominium unit and belong to the Defendant.

(Doc. #: 31-4, Pg. 42-43).

Lastly, in Count 16, regarding the drainpipe repairs that occurred on February 25, 2017, the Third Amended Complaint alleges that,

> …Working on the [common element]…contactor damaged Plaintiffs' original high-quality drain that was connected properly to the [common element]. That contractor replaced the drain he damaged with a used "second-hand" drain of a lower quality that he connect[ed] in a faulty manner resulting in leaks of drainage water inside the kitchen cabinet.

(Doc. #: 31-4, Pg. 54).

The allegations in the Third Amended Complaint referenced above, when liberally construed in favor of the insured, detail specific facts of property damages potentially caused by an occurrence, as defined and covered by Plaintiff's policy. These incidents all fall within the policy coverage period and within the coverage territory. Cambridge's policy defines "Occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. #: 126, ¶ 16). It defines "Property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it", or "loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it." *Id*.

The allegations about the boiler at the Association indicate that matters "greatly escalated" in March of 2016 shortly after physical damage was discovered, implying that some damaging event occurred on or around that time. (Doc. #: 31-4, Pg. 37). There are no explicit

5

allegations in Count 10 stating that any of the Underlying Defendants intended to damage the boiler or expected damage to the boiler. Instead, the allegations state that, "Defendant [Michael Mento] and Defendant [Driton Ramushi] engaged in a certain course of conduct to cause damage to the aforementioned property." *Id*.

In Count 13, which remains pending in the Underlying Litigation (Doc. #: 126, ¶ 21), the allegations about the hot water lines again imply that matters worsened in early 2016. (Doc. #: 31-4, Pg. 43). They also add that an independent plumber found the issues with the hot water lines were caused by "defects in the main pipes". (Doc. #: 31-4, Pg. 43). As with Count 10, there is no explicit allegations that this defect was somehow intended or expected by the Association or Individual Defendants.

Count 16 of the Third Amended Complaint in the Underlying Litigation contains allegations regarding a drain connected in a "faulty" manner by a third-party contractor. (Doc. #: 31-4, Pg. 54). As with Counts 10 and 13, there is no indication that this faulty installation was intended or expected by the Association or Individual Defendants, or the third-party contractor who installed the pipe. While the Underlying Plaintiff does allege that the contractor was unlicensed, certain plumbing work may be done in Illinois without a license under 225 ILCS 320/0.01, the Illinois Plumbing License Law. The allegation regarding the contractor being unlicensed therefore does not necessarily make the faulty installation intended or expected.

Unlike in *W. Am. Ins. Co. v. Midwest Open MRI, Inc.*, 2013 IL App (1st) 121034, ¶ 22, 989 N.E.2d 252, 260, the allegations regarding the covered damages in the Underlying Litigation are not solely based on theories of conspiracy, or fraud and deception. The Underlying Plaintiff's theory is also not based on a theory of intentional conduct involving a hidden scheme, as with *Steadfast Ins. Co. v. Caremark Rx, Inc.,* 359, Ill.App.3d 749, 758, 835 N.E.2d 890, 898(1st Dist.

2005). The Underlying Litigation clearly includes factual allegations of property damages that could potentially be found to have been caused by an occurrence as defined by Cambridge's policy. Cambridge therefore has a continuing duty to defend the Association against causes of action related to these alleged property damages.

> **B. The Third Amended Complaint in the Underlying Litigation alleges bodily injuries that were caused by an occurrence, as defined in Cambridge's policy, and may potentially give rise to a duty to pay or indemnify.**

Cambridge also fails to show that there is no potential of Cambridge's policy covering the bodily injuries alleged in the Underlying Plaintiff's Third Amended Complaint. The Third Amended Complaint includes specific allegations regarding bodily injuries that were caused by a valid occurrence, including to the Underlying Plaintiff's minor child. In Count 13, the Underlying Plaintiff alleges that, "Injuries include drastically affecting the health and safety of Plaintiffs and their minor [dependents] who include a [newborn] baby. (Doc. #: 31-4, Pg. 44). For Count 16, the Underlying Plaintiff alleges that the injuries include "sickness, distress and exposure to cold weather to Plaintiffs, their minor dependent and the remaining residents of the 15 (fifteen) units." (Doc. #: 31-4, Pg. 52).

"Bodily injury" is defined under Cambridge's policy as "sickness or disease sustained by a person, including death resulting from any of these at any time." (Doc. #: 126, Pg. 7). The allegations mentioned above clearly fall within this definition. Additionally, the Underlying Plaintiff alleges that the above-referenced property damages at the Association subsequently caused the bodily injuries to himself and his family. These bodily injuries were therefore alleged to have been caused by the same occurrences that caused the property damages at the Association, and as such are potentially covered under Cambridge's policy as well.

7

### C. The Third Amended Complaint in the Underlying Litigation alleges wrongful acts covered by Cambridge's Condominium Enhancement Endorsement, and may potentially give rise to a duty to pay or indemnify.

Cambridge's Motion for Summary Judgment and State of Material Facts also fail to establish that there is no potential of Cambridge's policy covering the alleged wrongful acts by the Association's directors and officers in the Underlying Plaintiff's Third Amended Complaint. The Third Amended Complaint in the Underlying Litigation includes specific allegations regarding wrongful acts that were breaches of director and officer duties, or were acts of negligence, error or omission. In Count 16, a cause of action solely against the Association, the Underlying Plaintiff alleges that the Association's Declaration was breached due to the Board,

> (1) Failing to obtain objective and independent evaluation by a professional inspector who is not a contractor with a conflict of interest that documents the damage and determines the need to replace with a new boiler giving reasonable grounds for that.
> (2) Replacing the boiler by the end of October 2016 during the cold season instead of summer in or around May 2016.

(Doc. #: 31-4, Pg. 52).

Additionally, regarding the Association's drainpipe, the Underlying Plaintiff states that,

> Defendants breached their affirmation by causing an unlicensed and uninsured contractor [to] enter Plaintiffs' unit and work inside Plaintiffs' condominium unit instead of a license and insured one. They also breached their affirmation by failing to restore everything to its original condition.

(Doc. #: 31-4, Pg. 54).

Cambridge argues that these wrongful acts are not covered under its policy because they were performed outside the scope of the Individual Defendants' duties as officers or directors. These acts, however, clearly fall within the scope of the Individual Defendants'

8

duties as officers or directors. The Illinois Condominium Property Act lists the powers held by a board of directors, including that,

> …every meeting of the board of manager shall be open to any unit owner, except that the board may close any portion of a noticed meeting or meet separately from a noticed meeting to: (i) discuss litigation when an action against or on behalf of the particular association has been filed and is pending in a court or administrative tribunal, or when the board of managers finds that such an action is probable or imminent, (ii) *discuss the appointment, employment, engagement, or dismissal of an employee, independent contractor, agent, or other provider of goods and services*, (iii) interview a potential employee, independent contractor, agent, or other provider of goods and services, (iv) discuss violations of rules and regulations of the association, (v) discuss a unit owner's unpaid share of common expenses, or (vi) consult with the association's legal counsel; that any vote on these matters shall take place at a meeting of the board of managers or portion thereof open to any unit owner…(emphasis added).

765 ILCS 605/18(a)(9)(A).

The alleged wrongful acts made by the Individual Defendants, such as the decision not to obtain an independent contractor, whether to hire a licensed or unlicensed contractor, or the decision not to make certain repairs during a particular season, are clearly acts that fall within the scope of the Individual Defendants' duties a directors and officers of the Association.

These allegations of wrongful acts also do not fall under the exclusion for "dishonest, fraudulent, criminal, or malicious acts…" Count 16 is labeled as a cause of action for breach of contract, and this is not a misnomer. The cause of action pleads facts that fall within the definition of "wrongful acts" in Cambridge's policy, which includes any "negligent act, any error, omission or breach of duty of directors or officers of the "Named Insured" while acting in their capacity as such." (Doc. #: 126, ¶ 7). There is clearly a potential, given the factual allegations in the Underlying Litigation, for there to be a finding that these wrongful acts were committed by Individual Defendants, and that such

acts were not dishonest, fraudulent, criminal or malicious. There is therefore also potential for these factual allegations to give rise to a duty for Cambridge to pay or indemnify the Association under the policy.

WHEREFORE, for the above stated reasons, Defendant, Bell and Arthur Condominium Association, requests that this Honorable Court deny Plaintiff's Motion for Summary Judgment on its Amended Complaint for Declaratory Judgment.

    Respectfully submitted,

    /s/ Brian J. Gilbert
    Attorney for Defendant

Brian J. Gilbert
**Chicago Advocate Legal, NFP**
*Attorney for Defendant*
53 W. Jackson Blvd., Suite 661
Chicago, Illinois 60604
T: (312) 374-1916
Firm No.: 60295
bgilbert@chicagoadvocatelegal.com

## **CERTIFICATE OF SERVICE**

I certify that on August 24, 2020, the forgoing Defendant's **Memorandum in Opposition to Plaintiff's Motion for Summary Judgment**, was filed electronically with the Court.

/s/ Brian J. Gilbert
Attorney for Defendant