IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CAMBRIDGE MUTUAL FIRE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> BELL & ARTHUR CONDOMINIUM ASSOCIATION, an Illinois not-for-profit corporation, MICHAEL MENTO, LISA MIJATOVIC, DRITON RAMUSHI, SELI BENKO, ALAN ALHOMSI, and NAWWAR ALHOMSI, <br><br> Defendants. | No. 18 C 05951 <br><br> Judge John J. Tharp, Jr. |

## MEMORANDUM OPINION AND ORDER

Cambridge Mutual Fire Insurance Company ("Cambridge") seeks a declaratory judgment that it owes no duty to defend a state court lawsuit under a policy that it issued to defendant Bell & Arthur Condominium Association ("Association"). In the underlying state court case, defendants Alan Alhomsi and Nawwar Alhomsi (the "underlying plaintiffs"[1]) sued the Association[2] and defendants Michael Mento, Lisa Mijatovic, Driton Ramushi, and Seli Benko

---

[1] Cambridge has joined the Alhomsis as defendants in this case so that they will be bound by any judgment. The Alhomsis have not responded to the summary judgment motion.

[2] The underlying Third Amended Complaint in the state court case also names the Association as a plaintiff and purports to bring claims derivatively *on behalf of* the Association. ECF No. 35-4 ("TAC"). The underlying plaintiffs filed the TAC *pro se*, however, and had no authority or capacity to assert claims on behalf of the Association (particularly when simultaneously pressing claims *against* the Association); there is nothing in the record to suggest that the Association authorized the underlying plaintiffs to assert any claims on its behalf. In any event, neither the Association nor the individual defendants rely on claims asserted solely on behalf of the Association in responding to Cambridge's motion, so there is no need to consider such claims in assessing whether Cambridge has a duty to defend the claims asserted against the Association and the individual defendants.

("the individual defendants") in the Circuit Court of Cook County.[3] During the relevant time periods, the underlying plaintiffs owned one of the Association's condominiums, and the individual defendants were board members of the Association. The underlying plaintiffs' Third Amended Complaint asserts 27 state tort claims against the Association and the individual defendants for mismanagement of their condominium and various other misconduct. Cambridge asserts that it has no duty to defend the Association or the individual defendants under its insurance policy. The Court agrees with Cambridge that the policy's bodily injury, property damage, and personal injury liability provisions provide no basis for coverage. The underlying plaintiffs' complaint, however, also alleges that the Association's board members committed "wrongful acts" that could potentially form the basis for coverage under the policy's Directors and Officers provisions. Finding that the insurance policy obliges Cambridge to defend those claims, the Court denies Cambridge's motion for summary judgment.

## BACKGROUND

Cambridge's Business Liability Coverage Form imposes upon Cambridge the duty to defend the insured against liability arising out of "bodily injury," "property damage," "personal injury," or "advertising injury." Ex A. to Am. Compl. at 48, 12/6/2015 Insurance Policy, ECF No. 35-1 ("Policy").[4] To trigger coverage under the Policy, an "occurrence"—"an accident, including continuous or repeated exposure to substantially the same general harmful conditions"—must cause the alleged bodily injury or property damage. *Id.* at 48, 61. The Business Liability Coverage

---

[3] The parties have not informed the Court of the status of the underlying state court litigation, so the Court assumes the underlying state court litigation is ongoing.

[4] The Association renewed its policy twice between December 2015 and December 2018. For ease of reference, citations in this order are to the original policy effective between December 2015 and December 2016. The policy language relevant to this opinion did not change in subsequent renewals.

Form explains that "[a]n organization" designated in the declarations, *i.e.*, the Association, as well as its "executive officers and directors," *i.e.*, the Association's board members, are considered insureds under the Policy. *Id.* at 56. In Count I of its amended complaint in the case before this Court, Cambridge asserts that the underlying plaintiffs have not alleged 'bodily injury," "property damage," or "personal injury" within the meaning of the Policy.[5]

The Policy also includes a "Condominium Enhancement Endorsement." *Id.* at 95. That addendum contains a section entitled "Directors and Officers." *Id.* at 97. Under the Directors and Officers section, Cambridge asserts an obligation to "pay those sums that the 'Insured' becomes legally obligated to pay as damages . . . arising out of any 'Wrongful Act' committed during the policy term." *Id.* at 98. That section also imposes a "duty to defend the insured against any 'suit' seeking damages or non-monetary damages." *Id.* As is the case for many contracts, the Policy tells the reader that capitalized terms and terms that appear in quotations carry special meaning. *Id.* at 97. "Insured," as employed in the Directors and Officers section, means "any former, present or future director, [or] officer . . . while acting on behalf of the 'Named Insured.'" *Id.* at 99. "Named Insured" means the "organization named in the Declarations," or the Association. *Id.* A "Wrongful Act" means "any negligent act, any error, omission or breach of duty of directors or officers of the 'Named Insured' while acting in their capacity as such." *Id.* In other words, the Directors and Officers section provides liability coverage arising out of the board members' negligent or erroneous official acts. Under the section's relevant exclusions, however, Cambridge does not cover liability arising from board members' "dishonest, fraudulent, criminal, or malicious acts."

---

[5] There is no dispute that the underlying plaintiffs' Third Amended Complaint does not allege any loss covered by the "advertising injury" provision.

3

*Id.* at 98. In Count II of its amended complaint, Cambridge asserts that the underlying plaintiffs do not allege that defendants committed a "Wrongful Act" under the Policy.

Cambridge moves for summary judgment on both of its claims,[6] seeking a declaratory judgment that it does not owe defendants a duty to defend under both relevant Policy provisions.

**DISCUSSION**

Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining the scope of an insurer's duty to defend as a matter of law, the Court compares the allegations in the underlying complaint to the policy language. *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 154-55, 828 N.E.2d 1092, 1098 (2005).[7] The Court must "liberally construe[]" the allegations in the underlying complaint in the insured's favor. *Id.* at 155, 1098. That means that the insurer must defend the claimant if the underlying suit alleges facts even "potentially" within the scope of policy coverage. *Id.* Even if only one of the theories alleged in the underlying complaint falls within the policy's coverage, the insurer must defend the insured against all of the claims. *Id.* To invoke Cambridge's duty to defend, therefore, the defendants need only show that one of the counts in the underlying complaint falls within a policy provision's scope.

**I.    Bodily Injury and Property Damage**

Cambridge first asks this Court to declare that the Policy's "bodily injury," "property damage," and "personal injury" do not trigger its duty to defend. The defendants do not claim that

---

[6] Cambridge's complaint also includes a claim for reimbursement of defense costs (Count III) but Cambridge acknowledges that the viability of the reimbursement claim turns on whether it has a duty to defend. Pl.'s Mem. Supp. Summ. J. at 1 n.1, ECF No. 127-1.

[7] The parties do not dispute that Illinois law applies to this action.

4

the underlying plaintiffs' lawsuit alleges any "personal injury" as defined by the Policy. Because the defendants bear the initial burden of showing that claims fall within coverage, *Addison Ins. Co. v. Fay*, 232 Ill.2d 446, 453, 905 N.E.2d 747, 752 (2009), the Court will address only the scope of coverage for "bodily injury" and "property damage" liability. In those respects, the Court recognizes that this case resembles *State Auto Prop. & Cas. Ins. Co. v. Bell & Arthur Condo. Ass'n*, 454 F. Supp. 3d 792, 801 (N.D. Ill. 2020), in which Judge Kendall found that the insurer State Auto owed no duty to defend the defendants in this case. Although that case involved a different insurance company plaintiff, it addressed the same underlying lawsuit and the same defendants. Like the Cambridge policy, the *State Auto* policy imposed a duty to defend against lawsuits seeking damages arising from bodily injury, property damage, personal injury, or advertising injury, and defined those injuries in similar ways. *Id.* at 795-96. Considering these similarities, the *State Auto* case offers a useful starting point in assessing the bodily injury and property damage allegations in the underlying suit.

To start, the Court agrees with Judge Kendall that "Counts 1, 2, 3, 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 16, 18, 19, 20, 21, 23, 26, and 27 do not allege anything pertaining to property damage or bodily injury relating to an occurrence, even in a light read generously to the policy holders." *State Auto Prop. & Cas. Ins. Co. v. Bell & Arthur Condo. Ass'n*, 454 F. Supp. 3d 792, 798 (N.D. Ill. 2020). Of those counts, the Association argues that Counts 13 and 16 involve liability for bodily injury and property damage.

In Count 13, the underlying plaintiffs allege that the individual defendants and the Association violated the Chicago Municipal Code by failing to provide the underlying plaintiffs with hot water. Underlying plaintiffs had been having problems with hot water ever since they moved into their home in October 2014. The problem gradually worsened until the underlying

plaintiffs allegedly discovered that "defects in the main pipes" caused the lack of hot water. TAC ¶ 206. Despite notice of the problem, underlying plaintiffs allege, defendants failed to fix it, adversely affecting the underlying plaintiffs' health and safety. The Association argues that the reference to the defects in the pipes alleges property damage and the reference to the negative effect on plaintiffs' health alleges bodily injury.

Under the Policy, an "occurrence," or an accident, must have caused the property damage or bodily injury for the allegations to fall within the Policy's scope. But the underlying plaintiffs do not allege what caused the "defects in the main pipes" that prompted the hot water shortage or when those defects occurred. The complaint vaguely suggests two possible dates that spurred the damage, but neither supports a claim for coverage. The first possibility is that something caused the damage sometime before October 2014, when the underlying plaintiffs moved in. The Cambridge policy period, however, only began in December 2014, and any claim outside of the policy period exceeds the scope of coverage. *See Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1129 (7th Cir. 2012). Any "continuous and repeated exposure" constituting an "occurrence" must have been caused by an accident that happened within the policy period. *Great Lakes Dredge & Dock Co. v. City of Chicago*, 260 F.3d 789, 795 (7th Cir. 2001) ("[I]n Illinois . . . an occurrence policy is not triggered unless loss to the claimant happened while that policy was in force."(emphasis omitted)). Any damage occurring outside of the policy's scope cannot form the basis for a claim for coverage.

The Association raises a second possibility, arguing that the allegations in Count 13 "imply that matters worsened in early 2016" and that some damaging event occurred around that time. Resp. to Mot. S. J. (Association) at 6, ECF No. 138. As Judge Kendall explained, however, the Court cannot "read into the complaint facts that are not there." *State Auto*, 454 F. Supp. 3d at 799

6

(quoting *Lagestee-Mulder, Inc. v. Consolidated Ins. Co.*, 682 F.3d 1054, 1059 (7th Cir. 2012)). Without any factual allegations to show that an accident could have potentially caused or exacerbated the defects in the pipes, the Court cannot speculate them into existence. Count 13 therefore does not trigger Cambridge's duty to defend because it does not allege an injury that an "occurrence" caused.

Regarding Count 16, underlying plaintiffs allege that the Association "breach[ed]" several "contracts." TAC ¶ ¶ 237-60. In one of the relevant "contracts," underlying plaintiffs allege that the Association breached an agreement by failing to hire an independent contractor to evaluate whether to replace a boiler and by replacing the boiler in the winter, causing "sickness, distress and exposure to cold weather." *Id.* ¶ 249. Those allegations, according to the Association, plead a "bodily injury" caused by an "occurrence." Here, too, the Court does not see any allegations of an accident that caused bodily injury. Underlying plaintiffs do not allege what caused the boiler to break or malfunction. Moreover, underlying plaintiffs allege that the replacement of the boiler at the wrong time, rather than the original damage to the boiler, caused their injury. That injury was expressly contemplated by the alleged agreement, but "[a]n accident, by its very nature, contemplates an event that is unforeseen and neither intended nor expected." *Crawford Lab'ys, Inc. v. St. Paul Ins. Co. of Illinois*, 306 Ill. App. 3d 538, 544, 715 N.E.2d 653, 658 (1999). Without alleging an accident that constitutes an "occurrence," underlying plaintiffs do not adequately allege bodily injury.

The Association also argues that Count 16 alleges property damage. Describing a separate "breach of contract," the underlying plaintiffs allege that they agreed to allow a contractor into their home to repair the common element drainpipe and that the contractor ended up damaging their personal property. Without more, the Court could potentially construe that "breach of

7

contract" claim as a claim for negligence. *See Acuity Ins. Co. v. 950 W. Huron Condo. Ass'n*, 2019 IL App (1st) 180743, ¶ 44, 138 N.E.3d 189, 199 (finding duty to defend when insured contractor's faulty workmanship damaged property outside the scope of the intended project). The underlying plaintiffs' own claims, however, undercut the Association's argument that an accidental "occurrence" damaged the underlying plaintiffs' property. According to the complaint, the contractor announced that his work would damage underlying plaintiffs' property before starting work, and the Association agreed to repair the expected damage. TAC ¶ 252-54. The Association's failure to repair the contractor's intentional damage thus forms the basis for underlying plaintiffs' claims. Such intended and expected damage to property cannot form the basis for "occurrence" coverage. *See Crawford Lab'ys*, 306 Ill. App. 3d at 544, 715 N.E.2d at 658. Neither can the Association's failure to repair the property pursuant to the underlying plaintiffs' agreement; such a breach of contract alleges only economic loss that is not considered property damage under Illinois law. *See Westfield Ins. Co. v. W. Van Buren, LLC*, 2016 IL App (1st) 140862, ¶ 19, 59 N.E.3d 877, 885. Count 16, therefore, does not allege property damage to support coverage.

That leaves Counts 10, 17, 22, 24, and 25, all of which facially allege "property damage."[8] Count 10 alleges that Defendants Mento and Ramushi "engaged in a certain course of conduct" to damage the building's boiler and that other defendants exacerbated the damage by failing to repair it. TAC ¶ 176. As with Count 13, the Court declines to read into the complaint claims of damage caused by an accident that are not there. *Lagestee-Mulder*, 682 F.3d at 1059. Without any facts

---

[8] Judge Kendall found that Counts 10, 17, 24, and 25 alleged conduct outside of the policy period covered by the State Auto policy. *State Auto*, 454 F. Supp. 3d at 799. Although those counts allege conduct during a time period covered by the Cambridge Policy, the Court finds that they do not support claims for coverage under the Policy's substantive provisions.

about the "course of conduct" that the defendants engaged in, the Court cannot infer that the conduct was accidental.

The remaining counts also clearly fall outside the scope of coverage. Counts 17 and 24 do not satisfy the Policy's definition of an accidental "occurrence" because they allege that intentional conduct caused the property damage. *See Pekin Ins. Co. v. McKeown Classic Homes, Inc.,* 2020 IL App (2d) 190631, ¶ 38, 161 N.E.3d 1059, 1070 (holding intentional conduct cannot constitute an "occurrence" under an insurance policy); TAC ¶ ¶ 265-66 (alleging that defendants "intentionally cause[d] damage" to underlying plaintiffs' security cameras and "failed to return them . . . even after many written requests"); *id.* ¶ ¶ 358-59 (alleging that defendants "intentionally cause[d] damage" and "seized and removed . . . personal property"). Count 25 does not allege any property damage because it seeks a declaratory judgment based on a defendant's false statement. TAC ¶ 367. As for Count 22, the Court adopts Judge Kendall's reasoning in the *State Auto* case. 454 F.Supp.3d at 799. That count states that some of the individual defendants breached their fiduciary duties by damaging property but again provides no details about the cause for or timing of the property damage. Without any facts supporting a theory of accidental property damage, the Court cannot invent them. The duty to defend applies only to facts that are explicitly alleged; "it is the actual complaint, not some hypothetical version, that must be considered." *Amerisure Mut. Ins. Co. v. Microplastics, Inc*., 622 F.3d 806, 812 (7th Cir. 2010). As Judge Kendall put it, "[s]imply stating that there was property damage with no additional detail is not enough" to support a claim for coverage. *State Auto*, 454 F. Supp. 3d at 799.

The Court finds no allegations of an occurrence causing property damage or bodily injury in the underlying plaintiffs' complaint. Accordingly, the provisions of the Policy covering liability

for "bodily injury," "property damage" and "personal injury" impose no duty to defend. The Court therefore turns to the next count of Cambridge's amended complaint.

**II.     Liability for Wrongful Acts in Directors and Officers' Official Capacity.**

In the second count of its amended complaint, Cambridge seeks a declaratory judgment that it has no duty to defend under the Directors and Officers section of the Condominium Enhancement Endorsement of the Policy. That section insures against liability arising from the "Wrongful Acts" of the Association's Directors and Officers, *i.e.*, its board members. Here, the defendants raise a claim for coverage that they did not appear to raise in *State Auto*: one based upon the individual defendants' allegedly "Wrongful Acts."

**A. Defendants Covered Under the Directors and Officers Section**

Before outlining the scope of a "Wrongful Act" under the Policy, the Court pauses to determine which defendants the Director and Officer section of the Condominium Enhancement Endorsement covers. Cambridge argues that the Directors and Officers section imposes the duty to defend only the individual defendants, rather than the Association, from suit. In support, Cambridge relies on the indemnification provision of the Directors and Officers section, which states that "[Cambridge] will pay those sums that the 'Insured' becomes legally obligated to pay as damages." Policy at 98. Citing the "Definitions" section of the Directors and Officers provision, Cambridge argues that "Insured" refers only to the Association's board members. According to Cambridge, the provision would have referenced the "Named Insured" if it meant to cover the Association.

Cambridge would have a better argument if it were referring to the correct provision. The provision Cambridge cites, however, refers to the duty to indemnify, rather than the duty to defend. Under Illinois law, the duty to defend is broader than the duty to indemnify, *Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010), and the Policy's language reflects that distinction.

10

Invoking its duty to indemnify, Cambridge ignores a provision that appears three lines down: "We have the right and duty to defend the *insured* against any 'suit' seeking damages or non-monetary damages." Policy at 98 (emphasis added). The Directors and Officers section then defines "suit" as a "civil proceeding in which damages because of 'Wrongful Acts' to which this insurance applies are alleged." *Id.* at 99.

Following contract interpretation principles, which apply to insurance policies, *see Westfield Ins. Co. v. Nat'l Decorating Serv., Inc.*, 863 F.3d 690, 695 (7th Cir. 2017), the Court finds that Cambridge's duty to defend extends to claims against the Association arising from board members' "Wrongful Acts." In the relevant provision invoking the duty to defend, the word "insured" appears in lowercase and without quotation marks. Policy at 98. The Director and Officer section begins by explaining that "[w]ords and phrases that appear in quotation marks have special meaning. Refer to Section II- DEFINITIONS." *Id.* at 97. By implication, words and phrases that do not so appear do not have the meaning intended in the Director and Officer "Definitions" section. *See Icarus Holdings 2, LLC v. AmGUARD Ins. Co.*, No. 20 CV 4334, 2022 WL 1422762, at *6 (N.D. Ill. May 5, 2022) (noting that the parties did not intend to ascribe a specific meaning to an insurance policy term that did not appear in quotation marks). After all, if Cambridge would like to imbue a word with a particular meaning, it knows how to capitalize it and surround it with quotation marks. *See Brile for Brile v. Est. of Brile*, 296 Ill. App. 3d 661, 668, 695 N.E.2d 1309, 1314 (1998) (declining to interpret policy under insurer's reading when insurer could have resolved any ambiguity in its favor).

The "Definitions" section of the Directors and Officers section—which supplements Cambridge's Business Liability Coverage Form—therefore does not supply the meaning of the lower case "insured" unadorned by quotation marks. Finding no relevant definition in the

Condominium Enhancement Endorsement, the Court looks to back to the Business Liability Coverage Form. That document answers the question, "who is an insured" as an organization designated in the policy declaration along with its officers and directors, *i.e.*, the Association and its board members, which include the individual defendants. Policy at 56. Even if there is any ambiguity as to whether the lowercase "insured" in the Directors and Officers section bears the same meaning as in the Business Liability Coverage Form, the Court must resolve any doubt in favor of the Association. *See U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 74, 578 N.E.2d 926, 930 (1991).

Based on the plain meaning of "insured" in the Directors and Officers section of the Policy, the duty to defend covers both the individual defendants and the Association. Even if Cambridge has a duty to indemnify only the individual defendants' allegedly wrongful acts, Cambridge must defend both the individual defendants and the Association from suits premised upon those acts. The Court must therefore examine the underlying complaint and determine whether any of the counts allege acts that are considered "wrongful" under the policy.

**B. Wrongful Acts**

Defendants claim that three Counts in the underlying state court case implicate "Wrongful Acts" as defined by the Policy: Count 15, a claim that the individual defendants and the Association denied the underlying plaintiffs a records inspection; Count 16, the count encompassing several breach of contract claims against the Association; and Count 21, a breach of fiduciary duty claim against the individual defendants.

Setting aside Count 16's breach of contract claims, which are presumed to be uninsured due to moral hazard, *see Hartford Cas. Ins. Co. v. Karlin, Fleisher & Falkenberg, LLC*, 822 F.3d 358, 359 (7th Cir. 2016), the remaining claims satisfy the policy's definition of "Wrongful Acts."

12

In Count 15, the underlying plaintiffs allege that the Association and the individual defendants failed to allow a records inspection that they were legally obligated to permit. TAC ¶ ¶ 228-32. Count 21 alleges that certain individual defendants adopted rules and regulations for the Condominium Association through procedures that violated Illinois law. *Id.* ¶ ¶ 326-30. Both of those actions sound like potential "errors" or "breaches of duty." Of course, legal labels such as "breach of fiduciary duty" do not guide this Court's analysis of the scope of an insurance policy. *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, 611 F.3d 339, 346 (7th Cir. 2010). But the facts of the complaint could be characterized as board members' failures to perform their official obligations in neglecting to follow the rules—in other words, errors, omissions, or breaches of duty performed in their official capacities.

In response, Cambridge argues that the Policy excludes any intentional conduct as well as "dishonest, fraudulent, criminal, or malicious acts." Policy at 98. Without citing any provisions of the underlying complaint, Cambridge declares that "all allegations against the individual defendants are for intentional and fraudulent conduct," which are not covered by the Policy. Reply in Supp. Mot. S. J. (Individual Defendants) at 14, ECF No. 140; Reply in Supp. Mot. S. J. (Association) at 10, ECF No. 141.

Cambridge reads too much into both the scope of the Policy and the allegations in the underlying plaintiffs' complaint. First, the Court is not convinced that the Directors and Officers section excludes coverage for liability based on any kind of intentional conduct. "Wrongful Acts" include "any negligent act, ***any*** error, omission or breach of duty." Policy at 99 (emphasis added). This phrase is ambiguous; either it is missing a conjunction before the second "any" or the second "any" is surplusage. If "negligent" were meant to modify "error," "omission," and "breach of duty," the second "any" would supply no meaning to the sentence. It is appropriate to resolve this

13

ambiguity against Cambridge, *Wilkin Insulation Co.*, 144 Ill. 2d at 74, 578 N.E.2d at 930, particularly because it is clear that Cambridge knows how to exclude conduct from coverage; its policy explicitly excludes "dishonest, fraudulent, criminal, or malicious acts." Cambridge could have added the word "intentional" to this list, but it chose not to. That choice informs the Court that even intentional acts that could be construed as errors, omissions, or breaches of duty fall within the scope of coverage. *See Brile*, 296 Ill. App. 3d at 668, 695 N.E.2d at 1314.

Second, even if the Policy covers only negligent errors, omissions, or breaches, the underlying lawsuit describes conduct that could plausibly be understood as negligent or careless. Nothing in Count 15 suggests that the defendants denied underlying plaintiffs' record request to mislead or defraud the underlying plaintiffs, rather than due to miscalculation or error. A failure to follow rigidly certain procedures and laws in adopting Association rules, as alleged in Count 21, also potentially encompasses negligent conduct. Underlying plaintiffs do allege, as part of Count 21, that one of the underlying defendants misrepresented that part of a rule was adopted during a board meeting when it was actually adopted at a different time. But underlying plaintiffs also allege, in the alternative, that the defendants failed to follow the rules and caused injury even "[a]ssuming there was no misrepresentation." TAC ¶ 333. The Court cannot fairly construe these claims to involve necessarily intentional, much less fraudulent, acts. Policy at 98. Just as the Court cannot read facts into the complaint in favor of the insured, the Court may not read facts in the complaint—like facts supporting intentional or misleading conduct—that would exclude the insureds from coverage.

Nor do the background facts of the underlying plaintiffs' complaint allege inescapably intentional or fraudulent conduct. Underlying plaintiffs allege generally that defendants caused injury through "fraud, conversion, property damage, misuse of corporation funds in violation of

the law, and *other actions*." TAC ¶ 2 (emphasis added). Other actions plausibly include those claims described above, which potentially involve questionable judgment calls rather than fraud or misrepresentation. Cambridge has therefore failed to carry its burden of showing that coverage for these claims would be excluded under the policy. *Fay*, 232 Ill.2d at 453-54, 905 N.E.2d at 752.

To be clear, the Court adopts no position on the merit or viability of underlying plaintiffs' claims. Even weak claims implicate an insurer's duty to defend under Illinois law. Construing the underlying complaint "liberally" in favor of the insured, as the Court must, *Midwest Sporting Goods Co.*, 215 Ill. 2d at 155, 828 N.E.2d at 1098, the Court finds that the underlying plaintiffs allege damages arising from "Wrongful Acts" as defined in the Policy.

\*   \*   \*

As previously noted, if one claim in an underlying lawsuit triggers an insurer's duty to defend, the insurer must defend against all claims in the suit. *Id.* Although the Policy does not support a claim for coverage based in "property damage or bodily injury," Cambridge owes the defendants a duty to defend against "Wrongful Act" liability. Accordingly, the Court denies Cambridge's motion for summary judgment.

Dated: October 21, 2022

John J. Tharp, Jr.
United States District Judge

15